# Appeal of William Atkinson et al.

The finding of facts by an auditor will not be set aside, unless for plain error.

Attaching creditors, standing in the attitude of assignees, must take the fund, if at all, subject to the prior equities of the attorney who recovered it, under an agreement with the plaintiff that he was to take his fees out of the claim.

Where the directors of a corporation for the handling and sale of wool, in the interest of the corporation executed their individual notes for the purpose of raising money in bank to be advanced to a customer for the purchase of wool, the corporation receiving his note with security as a collateral indemnity, upon the payment of the notes given by the directors individually they are entitled to the collateral note as an indemnity in preference to attaching creditors of the corporation.

(Argued October 18, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 106, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.  Certiorari sur appeal from a decree of the Common Pleas of Washington County confirming the report of an auditor as to the distribution of a fund raised by execution upon a judgment upon a promissory note.  Affirmed.

The auditor's first conclusion on the facts, in the following language, forms a sufficient history of this case:

"The Wool Growers' Exchange, the payee in the note, on which the fund for distribution was raised, was incorporated for the purpose, among other things, of advancing the interests of wool growers by establishing a wool house for the handling and sale of wool, and, under the power given by its charter, it opened a commission house in Steubenville, Ohio, in 1878, and afterwards, in 1881, opened a branch office and wool house in Philadelphia, Pa., and advertised itself as a co-operative commission house for the handling and sale of wool, soliciting consignments and offering to make advances and guarantee sales.

Cited in Hagemann's Estate, 5 Pa. Co. Ct. 576, 578, 45 Phila. Leg. Int. 226, where it was held that he might hold the fund as against attaching creditors.

NOTE.—For the lien of an attorney for compensation, see note to Spencer's Appeal, 6 Sad. Rep. 488.

"In the spring of 1882 C. M. Stephenson, a wool dealer of Washington county, Pa., who had, prior to that time, made numerous consignments of wool to the exchange, desired to purchase a large lot of wool, amounting to about 121,000 pounds, from J. F. Evans, of Bolivar, Ohio. This purchase he could only make by paying for the wool before its removal. To secure this wool he applied to the exchange for a special advance of $25,000, and at a meeting of its board of directors held in Steubenville, Ohio, on the 4th day of April, 1882, it was agreed that this advance should be made upon Stephenson giving his note, with sufficient security, in the sum of $10,000 as a collateral indemnity for the money so advanced.

"At the time this action was taken by the board of directors, the corporation had no money in its treasury, and it was understood that the whole amount so required would have to be borrowed from the Steubenville banks, upon the individual notes of the directors, as the money could not be raised upon the credit of the corporation. To carry out this arrangement John Medill, Wm. M. Lee, Benjamin Griffith, D. S. Gault, and A. C. Ault, directors of the corporation, left their individual notes in the hands of Benjamin Griffith, its secretary, drawn at thirty, sixty, and ninety days, to be handed over by him for discount whenever Stephenson presented satisfactory collateral security for the loan.

"Afterwards the note, a copy of which is given, was accepted by Mr. Griffith, and the individual notes of the above named parties were then discounted by the Steubenville banks, Stephenson paying the discount, and the proceeds placed in the hands of T. W. Vance, the agent of both the exchange and Stephenson, by whom it was paid to Mr. Evans on account of the wool purchased by Stephenson. This wool was then consigned for sale to the Wool Growers' Exchange at Philadelphia.

"The auditor further finds that, at the time this collateral note was given, it was intended to secure the payment of any balance of the loan obtained from the Steubenville banks upon the individual notes given by the directors, which might not be paid from the sale of the Bolivar wool. When the negotiation took place it was expected that the wool would all be sold and the notes lifted from the proceeds of sale as they fell due; and if sufficient was not realized from these sales, the collateral bond

was the security upon which the directors relied to make up the deficiency for the payment of these notes.

"On account of the failure to realize upon this wool as rapidly as had been expected, these notes were, at Stephenson's request, renewed from time to time, until the early part of 1883, he paying the discount. Since that time they have been lifted by the directors. The exchange received from the sale of the wool at Philadelphia was sufficient to have paid all but $3,229.46 of the amount borrowed from the banks; but no part of the sum realized was ever applied to the payment of these notes.

"In the whole transaction the directors acted in good faith toward the corporation, and as between them and the corporation, the debt incurred was one which the corporation should pay."

The referee appointed on the defendants' petition to open the judgment entered on the note for $10,000 found $3,229.46 to be due from Stephenson and his sureties in the note, and judgment was entered therefor, and execution thereon having been issued the sum of $1,533.54 was realized from some of the defendants, and the same was claimed as follows:

First. By John Medill and others, who were the directors of the exchange when the note was given, upon the ground that the security was given by Stephenson to protect the money borrowed by them from the banks and paid by them.

Second. By the assignee, for the benefit of creditors of the exchange.

Third. By Atkinson and others, attaching creditors of the exchange, who are the appellants in this case.

Fourth. By J. H. S. Trainer, Esq., so far as the same was necessary for his fees and expenses in the contest before the referee.

Thereupon J. W. Donnan, Esq., was appointed auditor to distribute the money so raised by execution and paid into court. He, in this report, rejected both the claims of the assignee of the exchange for the benefit of creditors and of the attaching creditors, and awarded the fund, as far as he adjudged proper, to J. H. S. Trainer, Esq., for his fees and expenses, for the reason that the directors had agreed that he should be paid out of what was realized on the judgment, and the remainder he directed should be paid to Medill and others, the directors.

The attaching creditors filed exceptions to the auditor's report, and the same were overruled and the report confirmed.

*J. P. Miller,* for appellants.—The collateral note given by Stephenson to the Wool Growers' Exchange purports to be a general security for money advanced on the Bolivar wool; and it was error for the auditor to find that it was a special indemnity for the $25,000 first advanced by the corporation on said wool— $49,000 having been so advanced in all. To sustain such finding would require the same degree of proof that would be required to change or reform a written contract. In so far as this is attempted to be done by parol testimony the evidence must be clear, precise, and indubitable. Spencer v. Colt, 89 Pa. 314.

Unless there had been fraud, accident, or mistake in the creation of the instrument itself, parol evidence was not admissible to vary the note. Phillips v. Meily, 106 Pa. 536.

It is true the appellees in their original petition alleged that a mistake had been made in drawing the note—that instead of being made payable to the order of the Wool Growers' Exchange, it should have been made payable to the order of said petitioners individually. But there was no evidence offered to sustain this allegation, and the auditor ignored it in his findings. It follows that all of the parol testimony in the case goes for naught, so far as the finding covered by the first exception is concerned. The claim made by the appellees being an equitable one, they must make it out in accordance with the rules of evidence applicable to cases in equity. Juniata Bldg. & L. Asso v. Hetzel, 103 Pa. 507.

In such cases the testimony of two disinterested witnesses, or of one such witness, corroborated by circumstances equivalent to another, is requisite. The instrument itself is the strong evidence to be overcome. Phillips v. Meily, 106 Pa. 536; Campbell v. Patterson, 95 Pa. 447; Thomas v. Loose, 114 Pa. 35, 6 Atl. 326.

Applying these principles to the case in hand would rule out the testimony of the appellees, leaving T. W. Vance the only witness to support the petitioners' claim.

The finding that the corporation had no money in its treasury at the time Stephenson applied for the advance on the Bolivar wool, and that the amount to be advanced would have to be borrowed, seems to be an inference drawn by the auditor from

the fact that the corporation was insolvent. The finding can only be sustained by evidence that would change or reform the collateral note, for this finding does in effect change it from a general security to the corporation, to a special indemnity to the directors. Mr. Griffith does say that the note was taken for the corporation from Stephenson, "with the understanding that it was for the benefit of the individuals." And in reply to the question—"Did you have a private understanding?" he answered, "Yes, sir." But a private understanding by the directors would not affect the written instrument. Cake v. Pottsville Bank, 116 Pa. 264, 2 Am. St. Rep. 600, 9 Atl. 302.

| | |
|---|---:|
| The Bolivar wool costs | $49,000 00 |
| The loss on its sale was | 3,229 46 |
| The amount received for said wool was | $45,770 54 |

—the difference between the cost price and the loss on sale. This sum is largely in excess of the amount borrowed from the banks; hence, it was error for the auditor to find that only sufficient was received from the sale of said wool to have paid all but $3,229.46 of the amount so borrowed. Sufficient money to have paid off the notes made by the directors having come into the hands of their agent, the obligation of the corporation to them, if any, is extinguished in equity.

The collateral note for $10,000 was taken in the name of the corporation, for the corporation, as a corporate act. To convert it into an implied trust for the purpose of securing the loan for which the directors became responsible to the banks requires that every of the following propositions be affirmatively established by satisfactory evidence, viz.: a. That the charter of the corporation authorized the borrowing of money; b. that the loan made by the banks to the directors individually was within the limitation authorized by the charter to be incurred; c. that by official action of the board of directors they were authorized to make the loan.

A failure to establish any one of these propositions is fatal to the trust. Pom. Eq. Jur. § 1093.

Borrowing without action of the corporation authorizing the loan to be made would be a voluntary unofficial act of the individuals and would not bind or in any manner affect the corporation. Allegheny County Workhouse v. Moore, 95 Pa. 408;

Ang. & A. Corp. § 239; Soper v. Buffalo & R. R. Co. 19 Barb. 310.

"A corporation can take nothing by construction." Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471.

A corporation possesses no powers but those which are given by its charter. Diligent Fire Co. v. Com. 75 Pa. 291; Allegheny Co. Workhouse v. Moore, 95 Pa. 408.

The acts or declarations of a director in a corporation will not bind or in any manner affect it unless they are shown to be within the scope of his ordinary powers or of some special agency. Ang. & A. Corp. § 239; Soper v. Buffalo & R. R. Co. 19 Barb. 310.

The collateral note can only be converted into a trust through the equitable powers of the court. The appellees have not only failed to act strictly within the scope of their authority with regard to borrowing the money, but it is shown that the rule of the corporation was to advance one half value on wool. Yet at the time they agreed to make the advance to Stephenson on the Bolivar wool, they knew that it would have to be paid for in full before it could be moved. From these circumstances and the doctrine of the authorities just cited, it follows that Kramer's Appeal, 37 Pa. 77; Cornwell's Appeal, 7 Watts & S. 308; and Knox v. Moatz, 15 Pa. 74, relied upon by the learned auditor to establish a trust, do not govern this case.

From the evidence in the case the directors were guilty of gross negligence and have no standing in equity to claim the proceeds of the collateral note. Pom. Eq. Jur. §§ 1093, 1094.

*Braden & Miller* and *Aiken & Duncan,* for appellees.—Attaching creditors obtain no higher or better rights in the property attached than has their debtor. Stevens v. Stevens, 1 Ashm. (Pa.) 190; Fessler v. Ellis, 40 Pa. 248; Good v. Grant, 76 Pa. 52; Noble v. Thompson Oil Co. 79 Pa. 367, 21 Am. Rep. 66.

The appellants all through their case treat this as if it were a proceeding to change or reform a written instrument. In so doing they assume facts that have no existence in this cause. We admit the correctness of the authorities they cite but say they have no application whatever to the case in hand. We have here and had below for determination the question of the ownership of a judgment standing in the name of the Wool Growers' Exchange. The auditor's appointment rested upon § 6 of act of

June 10, 1836, 1 Purdon's Digest, p. 763, pl. 116, which is as follows: "In all cases . . . where there shall be disputes concerning the distribution of the money . . . the court from which the execution shall have issued shall have power, after reasonable notice given, either personally or by advertisement, to hear and determine the same according to law and equity." Souder's Appeal, 57 Pa. 498.

PER CURIAM:

There are two classes of assignments here, *viz.:* 1, Those which allege error in the auditor's finding of facts; and 2, those which allege that he has erred in his conclusion of law.

It is sufficient to say in regard to the first that the alleged errors are not manifest. We must accept his finding of fact unless the error clearly appears. Loomis's Appeal, 22 Pa. 312; Whiteside's Appeal, 23 Pa. 114; Bedell's Appeal, 87 Pa. 510, and Thompson's Appeal, 103 Pa. 603.

Nor are we satisfied that his conclusions of law are erroneous. On the contrary we think they necessarily follow from the facts as found. The amount awarded to Mr. Tranier for his expenses and services was clearly right. His entire compensation was to come out of the fund when realized. It would have been gross injustice to turn over the entire fund, the result in large measure of his professional labor and skill, to an insolvent party, and leave him to an action against him. The attaching creditors have no cause to complain of this. They have no higher standing than their debtor. Good v. Grant, 76 Pa. 52.

Nor are the attaching creditors entitled to the balance of the fund. As the directors individually had to pay the notes given to the banks, and have not been repaid, they were entitled to the collateral note as an indemnity.

The decree is affirmed and the appeal dismissed, at the costs of the appellants.