Edelstein et al., Appellants, *v.* Carole House Apartments, Inc.

Argued September 17, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joseph R. Livesey,* for appellants.

*David J. Natale,* with him *ReDavid, Orlowsky & Natale,* for appellee.

OPINION BY JACOBS, J., December 13, 1971:

In this action to foreclose a mortgage the appellants demanded judgment against the appellee corporation in the amount of $39,322.00. After a trial, before Judge Francis A. CATANIA, sitting without a jury, judgment was entered for the appellants in the amount of $9,-364.34.

The mortgage in issue was given to secure performance of an agreement entered into between appellants as one party and Maurice C. Tepper, M.D., and Helen Tepper, his wife, as the other party. The agreement was in writing and dated July 3, 1967. In the agreement appellants agreed to sell Helen Tepper 100% of the capital stock of the appellee corporation for $78,114.00. Payment was to be made in installments over a period of time. All installments except the last one were paid by the Teppers. The last installment was for $35,000.-00 and was due August 3, 1968, with interest at the rate of 6% per annum, making a total due then of $37,450.00. When the payment fell due the Teppers tendered $20,592.00 in full payment, claiming credit for certain payments made by them to Girard Trust Bank on notes signed by Maurice C. Tepper and Jack E. Edelstein. The appellants refused the tender and subsequently instituted the instant foreclosure proceeding.

In their answer and new matter the Teppers averred that they were induced to enter into the agreement by appellants' fraudulent representation that appellants would assume the Girard Trust obligations in full, and that the $78,114.00 purchase price included $8,114.00

in legal fees owed by appellee corporation to one Lewis Kates, Esquire.

In the written agreement the Teppers relinquished any right and interest which they had in another corporation known as Goshen Arms, Inc., and the apartment house being constructed under that name. Immediately following that clause the following appears in the contract: "In consideration for said relinquishment, JACK E. EDELSTEIN hereby agrees to save, defend and hold harmless and indemnify MAURICE C. TEPPER and HELEN TEPPER from any and all expense or any other liability arising from certain construction loans and second stand-by mortgage commitments, with regard to the said apartment project. Further, in consideration for the TEPPERS' relinquishment of rights, JACK E. EDELSTEIN agrees to undertake and to assume Fifty (50%) per cent of the liability for Two (2) certain loans presently owed to GIRARD TRUST BANK, said notes being generally known as:-a note dated December 29, 1966, in an amount of $6,192.00 on account #718287, and the other being a certain consumer credit note in the amount of $8,500.00. . . ."

Since fraud had been alleged the court below permitted oral testimony to be taken to show the fraud. From this testimony it appeared that appellants, the Teppers, their son Edward, both parties' attorneys, and one Ralph Bodek met on June 20, 1967, in an effort to resolve their differences. At that time Lewis Kates, Esquire, represented appellants and Alan Aberman, Esquire, represented the Teppers. The court below found as facts that at the meeting appellants demanded that the Teppers repurchase the stock of the appellee corporation for $70,000.00[1] and pay the sum of $8,-

---

[1] On March 1, 1966, Dr. Tepper, the sole stockholder in Carole House Apartments, Inc., sold 80% of his stock to appellants who, apparently, later acquired the remaining 20% of the stock.

114.00 which was to be used to pay Mr. Kates' legal fees and costs; that appellants further demanded that Dr. Tepper relinquish his interest in Goshen Arms, whereupon Dr. Tepper demanded that he be relieved of his obligation on the two notes given to Girard Trust Bank; and that appellants said Dr. Tepper would be relieved of the obligation if the proceeds were used in the Goshen Arms project, but stated that the proceeds of the loans had not gone into Goshen Arms.[2]

At the meeting the appellants threatened to arrest Dr. Tepper and his son and daughter on charges of embezzlement if Dr. Tepper did not sign the agreement. Dr. Tepper was given time to make a decision. On June 23, 1967, criminal warrants were issued in the name of appellee for Dr. Tepper, his son, and daughter. On June 29, 1967, the agreement was signed and later the criminal actions were withdrawn by Mrs. Tepper after she became the owner of the appellee corporation.

The court below found that the proceeds of the Girard Trust loans went into Goshen Arms and that appellants' statement that the proceeds of the Girard Trust loans had not gone into Goshen Arms was untrue and fraudulent because appellants had in their possession all documents necessary to ascertain the truth of their statement. The court further found as the result of other testimony that the parties had later orally modified the agreement to provide for full credit on the Girard Trust loans. It was also the opinion of the court that the criminal warrants were fraudulent. The court found that Lewis Kates, Esquire, on April 24, 1968, started suit in Montgomery County against appellee for the same legal fees that had been made part

---

[2] Our examination of the testimony does not reveal any statement that appellant or appellants ever said that the proceeds of the Girard loans had not gone into Goshen Arms. At most, appellants were alleged to have said that Tepper would be reimbursed if they found that the money had gone into Goshen.

of the oral agreement. Finding that the true intention of the parties was that the purchase price include the attorney's fees and that appellee be given full credit for the Girard Trust loans, the court allowed credit for those items.

Fraud must be proved by clear, precise, and indubitable evidence. This means that the witnesses must be credible, distinctly remember the facts to which they testify, and narrate the details exactly. Such evidence is required to overturn a written instrument. *Gerfin v. Colonial Smelting & Ref. Co.*, 374 Pa. 66, 97 A.2d 71 (1953); *Laughlin v. McConnel*, 201 Pa. Superior Ct. 180, 191 A.2d 921 (1963). Whether the evidence of the one attempting to show fraud meets the standard is a question of law for the court, but if the standard is met the determination of which evidence is true is for the fact finder. *Highmont Music Corp. v. J. M. Hoffman Co.*, 397 Pa. 345, 155 A.2d 363 (1959). Fraud is the misrepresentation of a material fact on which the other party relies to his injury. *Cooper v. Gasteiger*, 278 Pa. 544, 123 A. 500 (1924). The breach of a promise to do something in the future is not fraud. *First Nat'l Bank v. Sagerson*, 283 Pa. 406, 129 A. 333 (1925). To vary the terms of a written agreement, such fraud must either have induced the contract or caused part of the agreement to be omitted.

Applying the above principles to the instant case we do not find fraud clearly proved. The court's finding that appellants said that the proceeds of the Girard Trust loans had not gone into Goshen Arms is not supported by the testimony. The findings of the trial judge sitting without a jury, though having the force and effect of a jury's verdict, may be overturned where they are not supported by the evidence. *Macchia v. Megow*, 355 Pa. 565, 50 A.2d 314 (1947). Giving appellee's testimony the benefit of most favorable treatment, all that can be found is that there was discussion at the

June 20th meeting about the Girard Trust loans and that Dr. Tepper would be relieved of liability if the Edelsteins found that the proceeds of the notes went into Goshen Arms. That was not a misrepresentation of an existing fact but a promise to do something in the future. Nothing is shown as to how this statement induced Dr. Tepper to enter into the contract. In fact, Mr. Bodek said this agreement was to be reduced to writing, but when the contract was signed more than a week later, after review by counsel for all parties, the agreement provided that appellants would assume only 50% of the Girard Trust loans. Nor is there any evidence to show that the alleged oral agreement was omitted by reason of fraud.

Fraud, accident, and mistake being absent, this is a classic situation for the application of the parol evidence rule rendering parol evidence inadmissible to vary or modify a written contract where the alleged prior or contemporaneous oral representations concern a subject specifically dealt with in the written contract. *See Bardwell v. The Willis Co.*, 375 Pa. 503, 100 A.2d 102 (1953), for a full statement of the rule. In determining whether the oral agreement comes within the scope of the written one a comparison can be made of the two and if they relate to the same subject matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the oral agreement must be taken to be covered by the writing. *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791 (1924). The Girard Trust notes were the subject of discussion. They were specifically included in the written contract whose terms must be considered to be the final agreement of the parties, superseding any prior or contemporaneous discussion of the subject.

The court found that the purchase price was intended to include the attorney's fee and costs, totaling $8,114.00, for Mr. Kates. No fraudulent misrepresenta-

tion was shown in this regard and while the understanding may have induced Dr. Tepper to enter into the contract that is no ground for varying the contract. It was incumbent upon the Teppers to show that the understanding was omitted by fraud and nothing was produced to show that. The parol evidence rule therefore prevents the Teppers from changing the terms of the contract with the Edelsteins.

The arrest warrants may also have induced the Teppers to sign the contract but we are unable to find any proof of fraud. The mere fact that the prosecutions were later withdrawn after the Teppers acquired ownership of Carole House Apartments does not prove that the statements in the information were false or that they were relied upon as true by the Teppers. The testimony shows only that the Teppers were threatened with arrest and that later the warrants were issued. Here evidence of fraud, if not missing entirely, is far from being clear, precise, and indubitable. The possibility of coercion or duress was not raised in the court below and will not be considered by us.

The lower court's finding of a subsequent oral modification of the agreement concerning the Girard Trust loans is based on what happened in October 1967. Dr. Tepper talked with Jack Edelstein at that time and testified that Jack Edelstein said that Tepper would be reimbursed for his payments on the Girard Trust loans if the Edelsteins found that the proceeds of the loans had gone into Goshen Arms. It is true that a written agreement can be modified by a subsequent oral agreement if the latter is based upon a valid consideration and is proved by evidence which is clear, precise, and convincing. *Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298 (1961). Since there was some evidence to support the oral agreement, we will not disturb the lower court's finding that the required quality of evidence had been met.

The lower court held that this contract was governed by §2-209 of the Uniform Commercial Code—Sales, 12A P.S. §2-209, which provides that an agreement modifying a contract for the sale of goods needs no consideration to be binding. Appellants argue that this was a sale of securities under article 8, Uniform Commercial Code—Investment Securities, 12A P.S. §§8-101 to -406, and that article 2 has no application. We find it unnecessary to answer this contention because the Statute of Frauds bars evidence of the oral modification.

Whether this transaction falls under Article 2 or Article 8 of the Commercial Code it is within the Statute of Frauds. Section 2-201 of the Code (12A P.S. §2-201) requires a sale of goods for $500 or more to be in writing to be enforceable and §8-319 (12A P.S. §8-319) requires any contract for the sale of securities to be in writing in order to be enforceable. Where a contract is required to be in writing its terms cannot be orally modified. *Brown v. Aiken,* 329 Pa. 566, 198 A. 441 (1938).

The lower court agreed that a subsequent modification of an agreement for the sale of stock must be in writing, but found that the requirement may be waived. However, the lower court never made a specific finding of waiver and we are unable to find support in the evidence for such waiver.

In claiming a waiver the Teppers rely upon *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 244 A.2d 10 (1968). The Court in *Universal* upheld a waiver of a contractual provision against oral modification. However, the Court declared that a waiver of such a provision, as well as a waiver of the Statute of Frauds, entails more than a mere subsequent oral promise. In delineating the requirements for a valid waiver the Court quoted from the Restatement of Contracts §224 (1932) as follows: "The performance of a

condition qualifying a promise in a contract within the Statute [of Frauds or in a contract containing a provision requiring modifications to be in writing (§407)] may be excused by an oral agreement or permission of the promisor that the condition need not be performed if the agreement or permission is given while performance of the condition is possible, *and in reliance on the agreement or permission, while it is unrevoked, the promisee materially changes his position."* (Emphasis added.) *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* supra at 559, 244 A.2d at 16 (1968).

From these authorities it is clear that the alleged promise to accord Dr. Tepper 100% credit on the Girard Trust obligations is insufficient to show a waiver unless accompanied by a material change of position by Dr. Tepper in reliance on the promise. Dr. Tepper asserts that he detrimentally relied on the promise to the extent of assuming the entire Girard Trust obligation. However, this does not amount to a detrimental reliance in that there was no change of position. The record discloses that Dr. Tepper was already liable on the Girard Trust notes as co-maker. Thus, he was legally obligated to repay the loan in its entirety regardless of whether or not the Edelsteins promised to accord him credit for the repayment. *Lit Brothers v. Goodman,* 144 Pa. Superior Ct. 43, 18 A.2d 519 (1941). Furthermore, Dr. Tepper admitted that he had made payments on the loan *before* the Edelsteins had promised to accord him credit. Under these circumstances Dr. Tepper cannot show a material and detrimental reliance on the alleged oral promise. Hence, there was no waiver of the Statute of Frauds and the evidence of the oral promise should have been excluded.

The appellants are entitled to judgment in an amount computed according to the terms of the written agreement. By the terms of that agreement appellee

must be given credit for 50% of the amount paid by it or Dr. Tepper on the Girard Trust loans.

Judgment is reversed and the case is remanded to the court below for proceedings not inconsistent with this opinion.