**DOUBLE–E SPORTSWEAR CORP.,**
Appellant,

v.

**GIRARD TRUST BANK and**
**X Corporation.**

**No. 73–1176.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 20, 1973.

Decided Nov. 19, 1973.

See also D.C., 55 F.R.D. 297.

Peter C. Paul, Rawle & Henderson, Philadelphia, Pa., for appellant.

Michael O'S. Floyd, Drinker, Biddle & Reath, Philadelphia, Pa., for appellee.

Before FORMAN, ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal, a diversity action, calls for an interpretation of the Uniform Commercial Code under Pennsylvania law and requires a decision as to the propriety of the entry of summary judgment in favor of the defendant bank. It presents questions of waiver of the Statute of Frauds, Section 2-209(4); of oral modification of a written agreement, Section 2-209(1); and of reasonable notice that strict performance would be required of a term previously waived, Section 2-209(5).

On March 24, 1971, Girard Bank and appellant entered into a written contract in which the bank agreed to sell and appellant agreed to buy a quantity of knitted shirts and sweaters for the price of $11.75 a dozen. The agreement required appellant to deposit $5,000.00 on account of the purchase price, which deposit was made; and gave the bank an option to terminate the agreement on or before April 1, 1971 by sending appellant written notice.[1]

On March 31, 1971, the bank's attorney, Bruce D. Schuter, telephoned George Langberg, appellant's attorney, informing him that the bank had received an offer of $14.00 per dozen and inquiring whether appellant would meet the offer. After consulting appellant, Langberg telephoned Schuter advising him that appellant would meet the offer, and according to Langberg's affidavit "inquired of what . . . [defendant] would require to make the agreement binding and unconditional . . . Mr. Schuter . . . informed me that defendant, for its own protection and to insure its obtaining the highest price for the goods, desired sealed bids from plaintiff and the firm who had made the offer of $14.00 per dozen."

---

1. Paragraph 10 of the Agreement provided: "Seller is hereby granted an option to cancel and terminate this Agreement, for any reason whatever, provided such option is exercised by notice in writing to that effect forwarded to Buyer together with the sum of $5,000 deposited hereunder on or before April 1, 1971, whereupon all liability from either party to the other shall cease and terminate and this Agreement shall become null and void."

The attorneys then agreed to a sealed bid arrangement. In his affidavit Langberg stated that Mr. Schuter agreed to a waiver to the right of cancellation and that he [Langberg] advised Schuter that "our understanding should be reduced to writing by a letter agreement which plaintiff was ready to execute that day."

Schuter directed Langberg to call Spahr, a bank officer, who in a subsequent telephone conversation, agreed with Langberg as follows: (1) there would be sealed bids; and (2) "[i]f the sealed bid of another was higher than that of [the] plaintiff, then [the] defendant was deemed to have exercised option to cancel the agreement dated March 24, 1971." Although Langberg offered to have the plaintiff "attend" the bank's offices on that day (March 31, 1971) with the sealed bid and the letter agreement, Spahr advised "that plaintiff was not required to attend in Philadelphia that day and that if plaintiff's representative would appear at his office on April 1, 1971 with the sealed bid and the letter agreement . . . he would accept the bid and sign the letter agreement on behalf of the defendant."

Langberg then prepared the letter agreement, read its contents to Spahr, received Spahr's approval over the telephone, was reassured by Spahr that it was not necessary to attend in Philadelphia on March 31, 1971, that it was satisfactory to deliver the sealed bid and new agreement in the forenoon of April 1, 1971: "Mr. Spahr assured me that the understanding as reflected in the letter agreement . . . read to him would be signed when the sealed bid . . . was delivered; he further informed me that there would be no cancellation if plaintiff was the highest bidder or if no sealed bid was received by

him from the other offeror." Later that day the bank's attorney, Schuter, telephoned Langberg. Langberg then read the letter agreement to Schuter who, in turn, advised Langberg that it was acceptable in all respects.

On the morning of April 1, 1971, plaintiff's representative appeared at Spahr's office to deliver the sealed bid and the letter agreement. Spahr refused to accept them. The refused bid was for the amount of $15.50 per dozen. On the same morning, Schuter telephoned Langberg informing him that the bank had, on the previous evening, sold the goods to a third party, Burnette, for $14.00 per dozen. Schuter related that the bank believed it had entered into a binding arrangement with Burnette when Spahr had taken a check from Burnette and had signed a receipt on the back of a business card.

Whereupon the bank orally purported to terminate the March 24, 1971 agreement, returned the $5,000.00 hand money, and sent plaintiff a letter of the same date expressing in writing what had been communicated orally.[2] The plaintiff sued. The bank moved for summary judgment, contending that the bank made a timely termination of the March 24, 1971 written contract. The plaintiff has appealed from the grant of defendant's motion. We reverse.

I.

We are in complete agreement with the following portions of the district court's opinion:[3]

The Court's jurisdiction in this case is based solely on diversity of citizenship, and so we must look to applicable state law. For purposes of this memorandum, the applicable Pennsylvania law will be referred to.

This case involved a contract for the sale of goods within the meaning

---

2. Paragraph 11 of the agreement provided in part:

"A notice shall be deemed sufficiently given when deposited in the United States post office or branch post office on or before the date herein limited therefor."

3. The parties have not cited us to, nor has our independent research disclosed, any Pennsylvania case dealing with the interrelationship of subsections (1), (3), (4), and (5) of § 2–209.

of the Uniform Commercial Code—Sales. 12A P.S. § 2–105, 2–106.

12A P.S. § 2–201 provides as follows:

"Formal Requirements; Statute of Frauds

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."

It is undisputed that the defendant never signed any Agreement embodying the modification alleged by plaintiff.

■ Plaintiff contends that there is a genuine issue of fact in this case, namely, whether or not the Bank waived its right to terminate the sales contract. It is asserted that the Statute of Frauds defense is inapplicable to this case because of 12A P.S. § 2–209. That section provides as follows:

"Modification, Rescission and Waiver

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the Statute of Frauds section of this Article (Section 2–201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."

. . .

1 Anderson, Uniform Commercial Code 2d Ed., interprets § 2–209(4), (5) as follows:

"§ 2–209:8 Defective modification or rescission as a waiver.

A modification or rescission may be inoperative because it fails to meet the formal requirements imposed by the Statute of Frauds (if the contract, as modified, comes within the Statute of Frauds) or by a clause of the original contract. But even if this is so, the agreement may nevertheless be effective as a waiver, without regard to whether there has been reliance thereon."

*Anderson* further states:

"The question of reliance on a waiver becomes important only when it is sought to retract the waiver." (F.N. 9, § 2–209)

"§ 2–209:9—Retraction of waiver.

The Code gives the party who has made a waiver the right to withdraw the waiver by reasonably notifying the other party that adherence to the terms of the contract will be insisted upon. Certain limitations upon the right of retraction exist:

(1) Waiver. By definition only a waiver may be retracted. There cannot be a retraction of an agreement between the parties as that would amount to a unilateral repudiation of the agreement between the parties.

(2) Notice. There can be no retraction unless reasonable notice is given to the other party that strict adherence to the waived term will be required.

(3) Estoppel. There can be no withdrawal when the circumstances are such as to estop the party from withdrawing."

An attempt at modification which does not satisfy the Statute of Frauds can operate as a waiver.

. . .

Section 2–209(5) permits the retraction of a waiver by reasonable notice to the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position by plaintiff in reliance on the waiver.

12A P.S. § 1–201(25) provides as follows:

"A person has 'notice' of a fact when
(a) he has actual knowledge of it; or
(b) he has received a notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

12A P.S. § 1–201(26) provides as follows:

"A person 'notifies' . . . another by taking such steps as may be rea-

sonably required to inform the other in ordinary course whether or not such other party actually comes to know of it."

## II.

The false premise from which the bank proceeds is that plaintiff is precluded from recovery because any oral modification of a written agreement is offensive to the Statute of Frauds, § 2–201. What the bank seems to overlook is that while an oral modification of a written agreement may theoretically be precluded, the code does explicitly provide for an oral waiver of the operation of the Statute of Frauds: "Although an attempt at modification or rescission does not satisfy the requirements of . . . [the Statute of Frauds] it can operate as a waiver." Section 2–209(4).[4] And once the Statute of Frauds is waived, there is no barrier to an oral modification of the terms of a written contract under § 2–209(1).

The district court found that the defendant "expressly consented to the oral modification, absent retraction, [and] is now bound to the new terms." What were the "new terms"? The "new terms" provided that the bank's right of cancellation, Paragraph 10 of the March 24, 1971 agreement, "shall be deemed eliminated from the agreement" on the happening of certain contingencies.[5] The court made this finding by "accepting the truth of plaintiff's allegations."

4. The drafters used the word "waiver" in subsection 2–209(4) as applicable to both subsections 2–209(2) and 2–209(3). Thus, we have concluded that the language of subsection (4) refers, in this case, to an oral waiver of the operation of the Statute of Frauds, "If the language be clear it is conclusive. There can be no construction where there is nothing to construe." United States v. Hartwell, 6 Wall. 385, 396, 18 L. Ed. 830 (1868), referred to by Justice Holmes as "rather an axiom of experience than a rule of law. . . ." Boston Sand and Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928).

5. As expressed in plaintiff's letter agreement confirming the oral agreement of March 31, 1971: "If we, [the plaintiff] are the highest bidder in the event of (1) or if there shall be no other sealed bidder and we shall be the purchaser of said goods, the purchase shall be upon all the terms, covenants and conditions of the agreement between us dated March 24, 1971 except (a) price which shall be our bid if it be the highest or $14.-00 per dozen if there be no other sealed bids, and (b) paragraph 10 of the said agreement dated March 24, 1971 shall be deemed eliminated from the agreement."

■■ Appellee devotes the principal part of its brief[6] to a broadside challenge to this finding of the court: ". . . Girard denies that the parties intended to or did in fact enter into any such oral agreement. . . ." The defendant suggests that "the resolution of this issue is totally unnecessary." We disagree. Indeed, we consider this to be one of the most material issues in this litigation. While we may fault, for incompleteness, the district court's explicit language which found an "oral modification" of a written agreement, implicit in its analysis also was a finding of an oral agreement to waive the Statute of Frauds requirement § 2–209(4). This being so, a factual finding of oral modification of Paragraph 10 of the Agreement was permitted, § 2–209(1). If an oral modification be found, then § 2–209(5), retraction of waiver, and its requirement of reasonable notice becomes a critical factual issue.[7]

The bank's affirmative challenge to the district court's finding of any oral modification in and of itself generates genuine issues of material fact as to waiver of the Statute of Frauds and oral modification of the written contract. This alone is sufficient to vacate the summary judgment and order these proceedings to trial.

There remains, however, still another issue for the fact finder. We deem as error the court's determination that as a matter of law plaintiff received reasonable notice of retraction of the waiver under § 2–209(5), simply because the plaintiff received the bank's message of April 1, 1971. We are not at all certain that the district court even considered the requirement of reasonableness, because its opinion emphasized only subsections (25) and (26) of § 1–201.[8] We perceive this to be a critical issue, factual in nature, to be resolved, on this record, by a fact finder, and not by the court.[9]

In sum, if a fact finder concludes that there was a waiver of the Statute of

6. "The Statute of Frauds bars any alleged attempt to alter orally the terms of the Agreement embodying Girard's option to terminate." (Appellee's Point 1.)

7. We have found it necessary to fill the interstices of the code because, while the drafters were meticulous to provide for a retraction of a waiver of a contractual term excluding modification except by a signed writing, § 2–209(5), they failed to provide an explicit provision for retraction of a waiver of the Statute of Frauds. We find this to be a drafting oversight and do not consider our interpretation to offend the "underlying purposes and policies" of the code. Section 1–102. We paraphrase what Mr. Justice Frankfurter has written of Mr. Justice Holmes: "To say 'We agree to all the generalities about not supplying . . . [commercial codes] with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean,' is worth more than most of the dreary writing on how to construe . . . legislation." Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 531 (1947) (footnote omitted).

The official comment to § 2–209(4) and (5) states:

4. Subsection (4) is intended, despite the provisions of subsections (2) and (3)

to prevent contractual provisions excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct. The effect of such conduct as a waiver is further regulated in subsection (5).

The purpose of subsection (5), as stated in the comment, was to further regulate "actual later conduct" of the parties as governed by subsection (4). It would seem, therefore, that the code's retraction of waiver provision, § 2–209(5), would apply equally to waivers of the Statute of Frauds as well as to waivers of contractual terms requiring a signed writing since both are included in Section 2–209(4). Any other interpretation compels the conclusion that a party "who has made a waiver" of the Statute of Frauds could never retract that waiver. We do not believe that this was the intention of the drafters.

8. Section 1–201(25) deals, *inter alia*, with those instances *when* a person has notice of a fact. Section 1–201(26) addresses itself in part to *how* a person notifies another.

9. Whether an actor's conduct is reasonable is generally a determination for the fact finder, not for the court. Otherwise, for example, in negligence cases it would remove the critical standard of the defendant's reasonable care from the jury.

Frauds and a modification of Paragraph 10, then it must further decide whether there was a retraction of the waiver. In order to do so, the fact finder must determine the precise time at which the bank purportedly gave "notification received by the other party that strict performance will be required . . ."; whether any notice of retraction prior to noon on April 1, 1971, was reasonable under the circumstances, in light of the plaintiff's offer to send a representative to "attend" the bank in Philadelphia on March 31, 1971, and the bank's insistence that this would not be necessary and that it "was satisfactory to deliver the sealed bid and new agreement in the forenoon of April 1, 1971"; and whether the plaintiff's forbearance from "attending" the bank on March 31, 1971, amount to "a material change of position in reliance on the waiver" so as to render the purported "retraction . . . unjust. . . ."

So viewed, we find that there are at least genuine issues of material fact as to: (1) whether there was a waiver of the Statute of Frauds; if so, (2) whether there was an oral modification of the agreement removing the bank's right of ex parte withdrawal; and if so, (3) whether the bank's purported retraction of the waiver of the Statute of Frauds met the standards set forth in § 2–209(5).

The judgment of the district court will be vacated and the cause remanded for proceedings consistent with the foregoing.

GARTH, Circuit Judge (concurring):

I agree with the majority that the presence of unresolved factual issues preclude the grant of summary judgment. However, I do not agree with a major portion of the majority's analysis leading to that conclusion. Our disagreement centers upon our respective interpretations of a section of the Uniform Commercial Code adopted by Pennsylvania (12A P.S. § 2–209 Section (4)). My research discloses that that section has not been authoritatively interpreted in Pennsylvania or in any other jurisdiction and, accordingly, I feel that an exposition of our different views is warranted, despite the fact that we ultimately reach the same result in terms of the instant case.

An essential predicate for the conclusion reached by the majority is that the term "waiver", as used in § 2–209(4), means *"waiver of the Statute of Frauds"* (*See* footnote 4 of the majority opinion: "Thus, we have concluded that the language of sub-section (4) refers, in this case, to an oral waiver of the operation of the Statute of Frauds . . . "). In effect, the majority opinion holds that although an attempt to modify the March 24, 1971 written agreement did not succeed (as the modification was not in writing), it nevertheless operated as a complete waiver *in toto* of the Statute of Frauds.

I cannot agree that § 2–209(4) is to be read in that fashion. Rather it is my view that the "waiver" to which § 2–209(4) refers is a waiver limited to the particular condition, term or portion of the written contract sought to be waived by a party entitled to waive it. It does not constitute nor operate as a wholesale waiver of the Statute of Frauds.[1] Hence, a much narrower reading of this section is required than that given to it by the majority. I understand the majority to be saying that oral modifications may always be viewed as enforceable waivers of the Statute of Frauds. Such a construction would render meaningless the direction of § 2–209(3) that the Statute of Frauds must be satisfied "if the contract as modified is within its provisions." Under my interpretation of § 2–209(4), after there has been an unsuccessful oral modification, a party entitled to waive a provision can waive

1. In my view, that section may be paraphrased to read as follows: "(4). Although an attempt at modification or rescission does not satisfy the requirement of sub-section (2) or (3) it can operate as a waiver of the particular condition, term or portion of the written contract sought to be waived."

that provision by agreeing to an oral modification, but obviously no new or affirmative term can be substituted therefor without satisfaction of the Statute of Frauds.

Any new or affirmative term may or may not be subject to enforcement [2] or may or may not be resisted by the other party. The question of the operative quality of a substituted affirmative term or provision does not concern us here, but is rather left to the operation of the Statute of Frauds (2–201) and to the particular construction to be accorded that situation when it arises.[3]

I suggest that under the majority view, once there has been an oral attempt to alter a written agreement, there could be no writing or Statute of Frauds requirement imposed thereafter on the parties, as once the Statute of Frauds has been waived, all other subsequent modifications would not require a writing. This, I suggest, could not have been the intention of the drafters of the Code.

Furthermore, if § 2–209(4) is to be read as the majority would have us read it, we would be obliged to ascribe one meaning to the term "waiver" as it is used in § 2–209(4) and another meaning to that term as it is used in § 2–209(5). I cannot believe that the drafters of the Uniform Commercial Code intended any such anomalous result, particularly when it is noted that § 2–209(5) refers to a waiver "affecting an executory *portion* of the contract . . . ." and provides that "strict performance will be required of any *term* [4] waived. . . . ."

One last observation: the Comment under 12A P.S. § 2–209(4) refers to the Restatement of Contracts, Section 224.[5] Nothing in that section would lead to the conclusion that the Statute of Frauds can be waived *in toto*. Instead, the examples and the text of that section suggest that a more restrictive type of waiver is contemplated.[6]

Within the context of the instant case, the Girard Bank, by having agreed to the oral modification of the written con-

---

2. 12A P.S. § 2–201(1) provides that:
"Except as otherwise provided in this section a contract for the sale of goods for the price of $500. or more is *not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought.* . . . ." (Emphasis supplied)

3. It is of interest to note that the terms of the modification to which appellant had agreed would, as a practical matter, not be called into issue by the *appellant*.
If sought to be enforced by the appellee bank, there was a letter agreement (memorandum) prepared and signed by the appellant (the party to be charged) satisfying the requirements of the Statute of Frauds. However, this is an issue we need not reach in this discussion, which is concerned only with the question of "what was waived"; i. e., the overall Statute of Frauds (subject only to retraction under § 2–209(5)), or, as I contend, just the bank's right to terminate.

4. The word "term" means "that *portion* of an agreement that relates to a *particular matter*." (Emphasis supplied) 12A § 1–201(42).

5. The Restatement declares:
"The performance of a condition qualifying a promise in a contract within the Statute may be excused by an oral agreement or promise of the promissor that the condition need not be performed, if the agreement or permission is given while performance of the condition is possible, and in reliance of the agreement or permission, while it is unrevoked, the promissee materially changes this position."

6. Obviously we are concerned here with how the courts of Pennsylvania would construe § 2–209(4). As noted, the Pennsylvania Comment cites as *accord* Restatement of Contracts § 224. While my research discloses no direct case on point with the instant case, § 224 has been cited with approval in Pennsylvania, leading me to the conclusion that the restricted waiver interpretation implicit in § 224 would be the interpretation placed upon § 2–209(4) by the Pennsylvania courts. *See, e. g.* Edelstein v. Carole House Apartments, Inc., 220 Pa.Super. 298, 286 A. 2d 658, 663 (1971); Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 244 A.2d 10, 16 (1968).

tract (which written contract included a provision granting the bank an option to terminate the contract at any time up to and including April 1, 1971), waived its option provision when it acceded to the oral agreement of March 31, 1971. The question remains as to whether its [Girard's] retraction of that waiver was effective and whether it met the requirements of 12A P.S. § 2–209(5). That is a matter for the fact finder, and I agree with the majority that on this record summary judgment is not available to resolve that issue. I therefore concur in vacating the judgment of the district court and in remanding the cause for further proceedings.