**In re John D. KEOWN and Kate S. Keown, Debtors.**

**Wayne and Joan WILLIAMS, Plaintiffs,**

v.

**John D. KEOWN and Kate S. Keown, Defendants.**

**Bankruptcy No. 80–00339K.
Adv. No. 81–0557K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 15, 1983.

Joseph S.U. Bodoff, Philadelphia, Pa., for plaintiffs/debtors.

Lawrence R. Scheetz, Richboro, Pa., for defendants.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case comes before the Court on a complaint to determine the dischargeability of a debt. The Plaintiffs claim that the debtors were guilty of defalcations while acting in a fiduciary capacity and, therefore, the debt should not be discharged. After trial held and upon submission of briefs by counsel, the Court finds that this debt should be discharged in bankruptcy.[1]

The source of the instant controversy is an agreement of sale executed by the parties on February 17, 1976. At that time, John D. Keown was the head of Gesko Homes, Ltd. which was in the business of residential home construction. The Williams approached him concerning the construction of a home in a subdivision he was developing. After choosing the style of home desired, the Williams signed an agreement of sale prepared by Mr. Keown. At the signing of the agreement, the plaintiffs placed a deposit of $4,670.00 with Mr. Keown. Subsequent to the execution of the agreement, Mr. Williams was offered a position in Washington, D.C. This new position required the Williams to move to the Washington area and, therefore, they sought to be released from the agreement of sale.

The Williams contacted an attorney, D. Laurence Rubini, Esquire, who had correspondence with Mr. Keown relating to return of the deposit money. According to the testimony of Mr. Rubini, Mr. Keown orally agreed to release the debtors' deposit. The funds, however, were never returned to the Williams.

Subsequent to proceedings in State Court, the Keowns filed for relief under the Bankruptcy Code. After an unsuccessful attempt at reorganizing their finances, the Keowns converted their case to a straight

---

1. This Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 752 of the Rules of Bankruptcy Procedure.

bankruptcy proceeding under Chapter 7 of the Bankruptcy Code. The Williams subsequently filed the instant complaint to determine dischargeability of the debt. The rights of the parties in the instant case stem from the agreement of February 17, 1976.[2] A careful examination of this document must be made before any determination of dischargeability can be rendered by the Court. A review of said agreement unveils a significant provision.

In paragraph 8 of the agreement, it was agreed that:

> 8. Deposits or hand monies shall be paid to agent for Seller, who shall retain the same until consummation or termination of this agreement in conformity with the Real Estate Brokers License Act of 1929, as amended, and Regulations thereto or hereafter published by the State Real Estate Commission.[3]

The plaintiffs argue that this provision imposes a fiduciary obligation on the Keowns. The Real Estate Brokers License Act of 1929 requires brokers to hold funds in a trust fund account and to be accountable for said funds at the consummation or termination of a real estate transaction. 63 Pa.Stat.Ann. § 440 (*Purdon*). The Williams argue that the Keowns misused funds which were to be held in escrow. The funds were never returned to the Williams and, therefore, the fiduciaries have defaulted on their obligation. *See,* 11 U.S.C. § 523(a)(4).

Initially, the Court will dismiss the complaint insofar as it seeks to bar the discharge of this debt as to Mrs. Keown. At the trial, counsel for the defendants moved for summary judgment on her behalf.[4] Counsel for the plaintiff agreed that the complaint should be dismissed as to Mrs. Keown.[5]

The Court will now turn to determining the liability of Mr. Keown. There is no dispute that Mr. Keown did not place these funds in an escrow account. The Williams' deposit money was placed in the general account for Gesko Homes.[6] Mr. Keown probably felt this to be sound practice. He signed the agreement and was, in fact, the president of Gesko Homes. In addition, Mr. Keown was acting on the advice of counsel.[7] Neither is there any dispute that the money was never returned to the Williams. Gesko Homes filed a petition for relief under Chapter XI of the Bankruptcy Act of 1898 in mid-1976. The attempted arrangement was unsuccessful and the case was eventually dismissed.[8]

Subsequent to the dissolution of Gesko Homes, the Williams brought action against Mr. Keown individually. After proceedings of both civil and a criminal nature in the Court of Common Pleas for Bucks County, the Keowns executed a promissory note and repayment agreement in settlement of the matter in July of 1979.[9]

Although the agreement of sale requires Mr. Keown to hold the deposit in an escrow account, the Court questions whether the plaintiffs are entitled to assert that they are the beneficiaries of such a trust. In paragraph 11 the agreement provides:

> 11. The said time for settlement and all other times referred to for the performance of any of the obligations of this agreement are hereby agreed to be of the essence of this agreement. Should the Buyer fail to make any additional payments as specified in paragraph # 3, or violate or fail to fulfill and perform any of the terms or conditions of this agreement, then and in that case all deposits and other sums paid by the Buyer on account of the purchase price, whether required by this agreement or not, shall be retained by the Seller, either on

---

2. Exhibit P–1.

3. *Id.*

4. Notes of Testimony, page 93.

5. Notes of Testimony, page 94.

6. Notes of Testimony, page 104.

7. *Id.*

8. Notes of Testimony, page 123.

9. Exhibit, P–8 and D–3.

account of the purchase price, or as liquidated damages for such breach, as the Seller may elect, and in the latter event, the Seller shall be released from all liability or obligation and this agreement shall become null and void and all copies will be returned to Seller's agent for cancellation.

There is no relevant clause in the agreement providing for the release of the funds to the buyer in event of default.

A review of the agreement reveals that the Williams did not comply with the provision requiring them to obtain mortgage financing within a fixed period of time. Indeed, the Williams never applied for a mortgage on this property,[10] nor did the Williams ever consummate the sale. In April of 1976, the Williams moved to the Washington, D.C. area.[11]

The defendant asserts that the Williams defaulted on the agreement and that therefore, the deposit should be forfeited in accordance with paragraph 11 of the contract and any further liability of Mr. Keown should be extinguished.

 As an additional defense, the defendant alleges that the purported release obtained by Mr. Rubini cannot be asserted through operation of the Statute of Frauds. This is an interesting and meritorious argument. As a general proposition, the Statute of Frauds requires a contract for the sale of real estate to be in writing. *Simon v. Beeck*, 300 Pa. 334, 150 A. 640 (1930); *Wally v. Wally*, 286 Pa. 413, 133 A. 627 (1926). Contracts required by a Statute of Frauds to be in writing may not be modified by parol. *Brown v. Aiken*, 329 Pa. 566, 198 A. 441 (1938); *Edelstein v. Carole House Apts.*, 220 Pa.Super. 298, 286 A.2d 658 (1971).

 The defendant also asserts that the Real Estate Brokers License Act of 1929 does not impose civil liability upon him.[12] The only sanctions available under the Statute are fines or actions against the broker's license by the Pennsylvania State Real Estate Commission.[13] No provision of this Act specifically imposes personal liability on the individual.

On the other hand, the Act does prescribe a course of conduct for real estate brokers. As such, a blatant violation of its provisions may be sufficient grounds for objecting to a discharge in bankruptcy. *In re Sherman*, 24 B.R. 507 (Bkrtcy.E.D.Pa.1982). The Act requires deposits paid to real estate developers to be held in escrow. 63 Pa.Stat.Ann. § 436c(d). The Williams' deposit was never placed in an escrow account.[14] Therefore, we can only conclude that the Act has been violated.

If the Williams were entitled to the return of their deposit, the Court would consider excepting this debt from discharge. The plaintiffs, however, have not convinced this Court that Mr. Keown is liable for these monies. There is a substantial question in our mind as to whether the Williams have defaulted under the agreement. Furthermore, the Statute of Frauds places the viability of the purported release in issue.

The debt of the Keowns to the plaintiffs, however, does not arise solely on the contract. Subsequent to the failure of the agreement, both civil and criminal proceedings were instituted in the Court of Common Pleas for Bucks County. The upshot of these cases was that John and Kate Keown executed a promissory note[15] and a repayment agreement[16] in favor of the Williams in July of 1979. This note and agreement were executed in settlement of the pending state court litigation. The plaintiff, however, has produced neither allegation nor proof that these documents were

---

**10.** Notes of Testimony, page 16.

**11.** Notes of Testimony, page 17.

**12.** 63 Pa.Stat.Ann. 431 et seq. (Purdon) *Trott v. Hild*, 190 Pa.Super. 85, 151 A.2d 832 (1959).

**13.** *Id.*

**14.** Notes of Testimony, page 104.

**15.** Exhibit P–8 and D–3.

**16.** Exhibit P–7.

executed with any fraudulent intent.[17] Indeed, the testimony of all parties was that the Keowns were unable to meet their obligations as evidenced by the filing for relief under Title 11. This Court, therefore, concludes that neither the note or the repayment agreement were executed with fraudulent intent.

An Order will be entered denying the complaint to determine nondischargeability of the debt.

Barbara Hadley Katz, DiPietro, Kantrovitz & Brownstein, P.C., New Haven, Conn., for debtors.

Frederick S. Ury, Sherwood, Garlick, Cowell, Joblin, Diviney & Atwood, P.C., Westport, Conn., for creditor, Westport Bank and Trust Co.

Daniel Meister, Norwalk, Conn., Chapter 7 trustee.

---

**17.** Paragraph 9 of the Complaint.