**UNITED STATES of America**

v.

**29.16 ACRES, MORE OR LESS, VALLEY FORGE NATIONAL HISTORICAL PARK et al.**

**Civ. A. No. 78–3364.**

United States District Court, E. D. Pennsylvania.

Sept. 15, 1980.

Peter F. Vaira, U. S. Atty., Richard J. Stout, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Allan B. Greenwood, Cremers, Morris, Greenwood & Tunnell, Phoenixville, Pa., for defendants David and Barbara Wells.

## OPINION

LUONGO, District Judge.

The United States of America commenced this action to take by its power of eminent domain certain parcels of land adjoining the Valley Forge National Historical Park. The motion currently before me involves the question of who holds title to one of these parcels.

The parcel in dispute consists of .68 of an acre, on which is erected a single-family residence. The record owners are Fred A. and Ruth E. Midgley. When it filed this action the government also named David and Barbara Wells as interested parties, because of information it had that they had entered into a lease-purchase agreement with the Midgleys in 1970, and might therefore have some claim to the property. Upon further investigation, the government concluded that the Wells did not have a valid interest in the property, and now move to dismiss them on the ground that they are not real parties in interest. *See* Rule 17, F.R.Civ.P.

The record[1] reflects that on April 8, 1970, the Midgleys leased the property in question to the Wells for a term of one year, commencing July 1, 1970, at a rent of $250 per month. Simultaneously, the parties executed an agreement of sale which provided for settlement on July 1, 1971. The Wells made a $2,000 downpayment, and an additional $400 deposit thereafter, and were to be given credit against the sales price for $100 per month of the $250 rental payments for a year. In a supplemental agreement executed the same day, the Midgleys agreed that if mortgage money were not obtainable in time to permit the Wells to make settlement as of July 1, 1971, they would extend the agreement of sale on a month to month basis (at a rental, apparently, of $150 per month, later increased to $185 per month, *see* the affidavits of the Wells and Midgleys), provided that the Wells made an *additional* $2,000 deposit against the sale price.

Settlement did not occur on July 1, 1971, and the Wells concede that they did not make the additional $2,000 payment provided for in the supplemental agreement. The Wells remained in the property as tenants. During the period of tenancy, the rent payments fell into arrears. In their affidavit, the Midgleys aver that deposit money was applied to the rent arrearages by agreement of the parties, and the Wells do not deny this allegation. In 1976, the Wells moved to California for what they expected to be a brief period, and granted the Midgleys power of attorney to draw upon retirement checks deposited in the Wells' bank account to keep the rent current. On September 13, 1977, the Midgleys wrote to the Wells, stating that the agreement of sale between the parties had terminated because of failure to make settlement, and stating that the deposit money paid toward the purchase had been credited against back rent. On October 11, 1977, the Wells responded through counsel, contending that the sales agreement was still in force, and that they were the equitable owners of the property. On June 28, 1978, the Midgleys wrote to the Wells giving notice of intent to terminate the lease, and on that same date sent a separate letter stating again that the agreement of sale had terminated, and that the deposit money had been credited against rent. On July 20, 1978, the Wells again responded through counsel, and reasserted their right to the property. The

1. The parties have presented affidavits and exhibits outside of the pleadings, and I will treat the motion, under Rule 12(b), as one for summary judgment to be disposed of as provided in Rule 56. *See also* discussion in text *infra*.

Wells have remained in California, and the Midgleys have refused to permit adult children of the Wells to occupy the property. Counsel for the Wells has offered to make settlement, but the Midgleys have refused on the ground that the agreement of sale expired.

■ A district court has jurisdiction in a condemnation proceeding brought by the United States to fix the amount of compensation to be awarded, and to apportion the award among the various claimants. This "necessarily includes the power to determine who among competing claimants owns the condemned land." *United States v. 1,629.6 Acres of Land, County of Sussex, State of Delaware*, 503 F.2d 764 (3d Cir. 1974). Competing claims have been asserted in the instant case, and the government has by filing its motion requested that I decide which claimant has the superior right.

■ As an initial matter, I have some concern over whether the motion before me by the government is a technically proper one. The motion is fashioned as a motion to dismiss the Wells as not being parties in interest. From the government's submissions, it appeared that they were proceeding under Rule 17, F.R.Civ.P., which requires that every action be prosecuted by the real party in interest. Plainly, however, Rule 17 relates to questions of standing and capacity to sue, and is not applicable in cases such as the instant one, where the real issue is the substantive rights of the parties. At argument, the government asserted that it was making its motion under Rule 71A, F.R.Civ.P., which sets forth special rules governing eminent domain proceedings. Specifically, the government contends that Rule 71A(i)(3) is controlling, which provides that "[t]he court at any time may drop a defendant unnecessarily or improperly joined." The government submits that since the Wells do not have a legally cognizable claim to the property being taken, that they were therefore improperly joined, and should be dismissed under Rule 71A.

I am not persuaded that Rule 71A(i)(3) is the proper vehicle for determining whether the claim of a particular party lacks substantive merit. Rule 71A itself, in subsection (c)(2), mandates joinder of all parties "claiming an interest," and the Wells certainly are claiming an interest here. Moreover, the relevant case law provides that "it is not necessary that a person actually own an interest in the parcel to be properly joined as a defendant," *United States v. 88.28 Acres of Land*, 608 F.2d 708, 712 (7th Cir. 1979), and that any party asserting an interest must be given the opportunity to participate in the condemnation proceedings. *United States v. Certain Parcels of Land*, 339 F.2d 414, 416 (3d Cir. 1964). It is true that the Advisory Committee Notes to Rule 71A interpret it as permitting dismissal where it develops that a party has "no interest," but I understand the Committee to be referring to situations where the party joined has no colorable claim of any kind to the property. The government is correct that it has an interest in ensuring that compensation is not awarded to the wrong party, with the result that the government might be required to pay twice for the property. But this is all the more reason why the Wells *are* parties in interest and were properly joined, because unless their interest is considered, these proceedings are subject to challenge. *Id.*

I agree with counsel for the Wells that in effect the government's motion is one for summary judgment against the Wells—*i. e.,* the government's position is that the undisputed facts of record establish that the Wells' claim to title to the property is legally deficient. Assuming this to be the case, I have a further difficulty with the government's filing the motion, because it seems to me that it is the Midgleys whose interests are adverse to those of the Wells, and who should move for summary judgment. Be that as it may, the affidavit of the Midgleys is part of the record; there is no apparent prejudice to them if the government champions their interest for purposes of this motion; and the record parties have stipulated that I may proceed as if the Midgleys were before me and consider the government's motion as one for summary

judgment under Rule 56, F.R.Civ.P. Accordingly, whatever procedural problems are raised by the form of the government's motion, I will nonetheless consider the motion on the merits.

▪ In moving for summary judgment, the government contends that the agreement of sale between the parties expired when the Wells failed to tender the additional $2,000 downpayment required by the supplement to the agreement of sale regarding extension of the time for settlement, with the result that their claim to title is without merit. The Wells, though conceding that the payment was not made, contend that subsequent oral agreements between themselves and the Midgleys discharged their obligation to make an additional deposit, and extended indefinitely the time for settlement. I agree with the government that, whatever subsequent discussions may have occurred, they have no legal effect. Since the Wells concede that they failed to make the additional $2,000 deposit, the agreement of sale expired, and the government is correct that I should conclude that title rests with the Midgleys.

▪ Two legal barriers stand between the Wells and their claim to title. First, there is the parol evidence rule, which precludes the introduction of oral testimony which varies or contradicts the terms of a written contract. *Globe Motors, Inc. v. Studebaker–Packard Corp.*, 328 F.2d 645 (3d Cir. 1964); *Walker v. Saricks*, 360 Pa. 594, 63 A. 9 (1949). Here, the Wells' burden in overcoming the rule is particularly heavy, because the contract itself provides that "[a]ny changes or additions to this Agreement must be made in writing and executed by the parties hereto."

▪ The Wells rely on the principle that *subsequent* modifications of a written instrument do not fall within the parol evidence rule, *Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298 (1961), and that even a clause prohibiting oral modification may itself be altered by subsequent agreements. *Encyclopaedia Britannica, Inc. v. Cowan*, 142 Pa.Super. 534, 16 A.2d 433 (1940). In order to prevail on this theory, the Wells would have to establish that the subsequent oral modifications were based upon a valid consideration, (which they have not alleged), and would have to prove the terms of the modification by clear and convincing evidence. *Pellegrene v. Luther*, 403 Pa. at 215, 169 A.2d 298. Even assuming that they could do so, however, it would be to no avail, for by successfully introducing parol evidence, the Wells would find themselves barred by the second obstacle which confronts them, the Statute of Frauds.

▪ Under the Pennsylvania Statute of Frauds a contract for the sale of land must be in writing. 33 Pa.Stat.Ann. § 1 *et seq.* When a contract is required by the Statute of Frauds to be in writing, its terms cannot be orally modified. *Brown, to use, v. Aiken*, 329 Pa. 566, 580, 198 A. 441 (1938). When oral testimony is admitted to modify a contract otherwise within the Statute of Frauds, the legal effect is to convert the entire agreement into an oral one, thereby rendering it unenforceable under the Statute:

It is the doctrine of this court, declared in numerous cases, that where a written agreement is varied by oral testimony, the whole contract in legal contemplation becomes parol. . . . When therefore, a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony, he reduces the whole agreement to a parol contract, and deprives himself of the right to have it specifically performed. He pulls down the house on his own head. When he converts the writing into an oral agreement, the statute declares it to 'be void.' *Safe Deposit & Trust Co. v. Diamond Coal & Coke Co.*, 234 Pa. 100, 111, 83 A. 54, 58 (1912).

Accordingly, even if the Wells could prove their allegations that oral agreements modified the written contract of sale, they could not prevail, because the Statute of Frauds would forbid my granting relief. *Brown v. Aiken, supra,* 329 Pa. at 580, 198 A. 441.

▪ The Wells contend that there is an exception to the Statute of Frauds relating

to modifications of the time in which the contract is to be performed. *Appeal of Smith and Fleek*, 69 Pa. 474 (1871). In *Fleek*, a contract for the sale of timber was executed, but no time for performance was specified. Thereafter, the parties orally agreed that the contract would be performed within a certain time. The Pennsylvania Supreme Court ruled that since time was not of the essence, but simply a detail of the agreement, the Statute of Frauds did not apply. Here, in contrast, the parties agreed in the contract.[2] that time was to be of the essence, and such an agreement is controlling. *Bogojavlensky v. Logan*, 181 Pa.Super. 312 (1956). More importantly, the clause which the Wells assert was orally modified related not only to time for performance, but also to the posting of additional deposit money. In a contract for the sale of land in which the seller is required to forbear from seeking other purchasers because he has granted an option, the matter of money to be deposited by the buyer is certainly of the essence of the agreement, and cannot be characterized as a detail not subject to the Statute of Frauds.

A further exception to the Statute of Frauds is that when a purchaser of property has taken possession and made improvements, his case is not within the Statute, because the fact of possession is sufficient evidence that the parties intended to create the estate claimed by the purchaser. *E. g., Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.*, 407 Pa. 230, 180 A.2d 1 (1962). Application of this rule would be inappropriate in the instant case, however, for the Wells were in possession of the property under a lease agreement, and the "improvements" which they made were consistent with their possessory interest under the lease. Accordingly, I cannot refuse to enforce the Statute simply by virtue of their being in possession, or from their having commissioned work at the property.[3]

The purpose of the Statute of Frauds is to eliminate the possibility that a party to a transaction will succeed in falsely representing the existence or terms of an agreement to the court. In the instant case, the Midgleys have asserted in their affidavit, without contradiction by the Wells, that today the property is worth significantly more than the price specified in the 1970 agreement the Wells seek to enforce. It is precisely because of the possibility of fraud in situations such as this one that the Statute of Frauds was created, and the most prudent course is to adhere literally to the terms of the rule.

Looking strictly to the written agreements between the parties, the only material issue[4] would be whether the additional

---

2. "The said time for settlement and all other times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be of the essence of this Agreement." Paragraph 2, Agreement of Sale, 4/8/70.

3. In this regard, I note that one concern of the Pennsylvania courts in applying the "improvements" exception to the Statute of Frauds is whether the party in possession can be compensated by damages. *See, e. g., Klingensmith v. Klingensmith*, 375 Pa. 178, 100 A.2d 76 (1953). Although the Wells cannot enforce the agreement of sale, they may have an action in law or equity under Pennsylvania law for unjust enrichment. *Meehan v. Cheltenham*, 410 Pa. 446, 189 A.2d 593 (1963). The Wells have not raised such a claim here, having raised the issue of improvements only insofar as it relates to their claim to title. I note, however, that such a claim, if it exists, properly belongs in the state courts, because my jurisdiction in a condemnation proceeding brought by the United

States only extends so far as the determination of legal title. To extend jurisdiction further would involve the federal courts in resolving a potentially limitless range of claims, e. g., mechanic's liens, landlord–tenant disputes, whenever the United States commences a taking.

4. I am aware of another potential fact issue in the case, i. e., whether the Midgleys did in fact apply the original deposit money against rent arrearages, as they contend, and if so, whether this would cause the Wells to be in default under the original agreement of sale. The Wells have not denied the statement in the Midgleys' affidavit that the original deposit money was so credited. For purposes of my decision here, however, whether that money was in fact credited is irrelevant, because I am resolving the motion on the basis of the Wells' admitted failure to make the *additional* $2,000 deposit required by the supplemental agreement.

$2,000 in deposit money was paid by the Wells when they failed to make settlement in July, 1971. Since the Wells admit that they did not make payment, under the terms of the agreement their option to buy the property expired, and their only interest in the property thereafter was a leasehold estate, which was subsequently terminated by the Midgleys.

Accordingly, the Wells have no legally cognizable claim to title, and the government's motion for summary judgment against them will be granted.