Charles M. REILLY, Appellant,

v.

The FIRESTONE TIRE AND RUBBER COMPANY, Appellee.

No. 84–5232.

United States Court of Appeals, Third Circuit.

Argued Oct. 25, 1984.

Decided June 10, 1985.

George A. Spohrer (Argued), Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, Pa., for appellant.

Ralph E. Kates, III (Argued), Francis G. Wenzel, Jr., Griffith, Aponick & Musto, Wilkes-Barre, Pa., for appellee.

Before GIBBONS and BECKER, Circuit Judges, and KATZ, District Judge *.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal in an ejectment case, in which our jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, concerns the ongoing validity of a long term commercial lease. The terms of the lease are extremely favorable to appellee, Firestone Tire and Rubber Company (Firestone), and are correspondingly unfavorable to appellant, Charles M. Reilly (Reilly), who purchased the property subject to the lease from the Small Business Administration (SBA). SBA had, in turn, purchased the property at a foreclosure sale under several mortgages it had taken as security for loans advanced to the prior owner. Reilly contends that the lease was discharged because the foreclosure was founded, at least in part, on pre-lease mortgages, and denies that his predecessor, SBA, affirmed the lease by its conduct or writings either before or after the judicial sale. Reilly also argues that, in any event, only post-sale conduct can operate to affirm a lease. Firestone rejoins that SBA, whose own mortgages post-dated the lease, procured assignment of the pre-lease mortgages solely with the intent of ousting Firestone as tenant, and that such conduct is improper and thus without effect under Pennsylvania law. Firestone also submits that SBA affirmed the lease both before and after the foreclosure sale.

The district court granted summary judgment in favor of Firestone, concluding that, under Pennsylvania law, the lease was not discharged because of the circumstances under which SBA had acquired the pre-lease mortgages, and that SBA had, in any case, affirmed the lease by its pre-sale conduct. We conclude, to the contrary, that the manner of SBA's acquisition of the pre-lease mortgages does not justify application of Pennsylvania's extremely narrow exception to the rules governing discharge of leases; we thus hold that, unless it was affirmed, the lease was discharged as a matter of law. On the latter point, we conclude that Pennsylvania law recognizes the possibility that a mortgagee in possession may affirm a lease both before and after a judicial sale, but that there are genuine issues of material fact regarding

---

* Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

the issue of affirmance. Accordingly, we will vacate the judgment and remand the case for further proceedings consistent with this opinion.

## I.

### A.

The relevant facts are quite involved. In 1957, Roddy Realty, Inc. (Roddy) purchased improved premises located at 486 Northampton Street, Edwardsville, Luzerne County, Pennsylvania. At the time of purchase, Roddy mortgaged the property to the Miners National Bank (Miners mortgage). In March 1960, Roddy took a second mortgage on the property, this time with Wyoming National Bank (Wyoming mortgage). On July 23, 1965, Roddy leased a portion of the property to Firestone for use as an automobile service center. The lease ran for a term of twenty years, with the option to renew for a series of five-year terms in favor of the tenant. Thereafter, in February 1966, Roddy once again mortgaged the property, this time to the Susquehanna Savings and Loan Association (Susquehanna I mortgage). At the same time, Miners and Wyoming assigned to Susquehanna their respective rights, title, and interest in the Miners and Wyoming mortgages.

Roddy continued to borrow against and mortgage the property as its value increased. In May 1970, Roddy took a second mortgage with Susquehanna (Susquehanna II mortgage). In January 1973, Roddy mortgaged the property to the United States Small Business Administration (SBA I mortgage). Shortly thereafter, Susquehanna assigned to SBA its rights under the Susquehanna II mortgage. Two years later, in March 1975, Roddy once again mortgaged the property to SBA (SBA II mortgage).

As partial security for the SBA II mortgage, Roddy assigned to SBA its interest in the Firestone lease. The assignment provided that in the event of default on the mortgage, SBA, at its option, could "enter in and upon the premises and take posses-

sion thereof, and collect rents and profits thereof...." It further provided that "upon curing all defaults the Assignor [Roddy], its successors or assigns, shall again be entitled to collect and retain the rents under the aforesaid lease" and that "upon payment of the aforesaid mortgage debt this assignment shall be rendered null and void and the said lease or leases shall be reassigned to the then owner...." In addition, the document contained the following language respecting the obligations of SBA as assignee:

> The undersigned Lessee of the above-mentioned leasehold consents to and agrees to be bound by the above Assignment of Lease with the understanding that Lessee's lease will be recognized by Assignee, its successors and assigns so long as Lessee is not in default under the terms of its lease.

Appendix at 22(b). Only Firestone and Roddy were signatories to the assignment. On June 30, 1976, SBA notified Firestone that SBA was accepting the lease assignment and requested that all monthly rental payments be transmitted directly to SBA. SBA thereafter accepted rent payments as mortgagee/assignee.

On October 31, 1977, Susquehanna assigned to SBA the Miners, Wyoming, and Susquehanna I mortgages. Soon after obtaining these assignments, SBA initiated foreclosure proceedings against Roddy in the United States District Court for the Middle District of Pennsylvania. SBA's amended complaint, filed on December 14, 1977, recited that Roddy had defaulted on all of the mortgages in SBA's possession: Miners, Wyoming, Susquehanna I, Susquehanna II, SBA I, and SBA II. Each of these mortgages was open and unsatisfied as of record at the time of the foreclosure proceedings. SBA claimed that the amount owed by Roddy on the mortgages was $983,336.97. On January 17, 1978, SBA secured a default judgment against Roddy. A judicial sale was held on May 3, 1978, and the United States Marshal transferred the property to SBA (the highest bidder) through a quitclaim deed.

During the foreclosure proceedings but prior to the judicial sale, SBA had notified Firestone that, as a result of the Miners and Wyoming assignments, SBA considered its lien position superior to Firestone's lease. After becoming owner of the premises, SBA reiterated in a series of letters to Firestone its belief that, because SBA had foreclosed on the two pre-lease mortgages, the sale had divested Firestone of its lease. Specifically, on July 20, 1978, SBA wrote to Firestone and set forth in great detail the facts and legal theories on which SBA supported its claim that its ownership of the property was not subject to the Firestone lease. In letters dated September 28, 1978, and October 13, 1978, SBA warned Firestone that it was refraining from bringing an action for ejectment solely because SBA was awaiting a response to an earlier offer by SBA to sell the property to Firestone. SBA also refused to accept rent checks from Firestone until it was assured that the acceptance of rent would not prejudice its legal position.

When it became clear that Firestone was not interested in purchasing the property, SBA began looking for other buyers. Eventually, SBA notified various realtors in the Wilkes-Barre vicinity, including the Kinsman Agency (Kinsman), that the property was for sale. Kinsman contacted Reilly to see if he would be interested in acquiring it. On August 7, 1980, Reilly entered into an agreement with Kinsman for purchase of the property. This agreement of sale specifically recited that Parcel I was leased to Firestone, and Reilly was given a copy of the Firestone lease before he signed the agreement.[1] On November 28, 1980, SBA transferred the property to Reilly by execution and delivery of a quitclaim deed.

## B.

On June 16, 1981, Reilly filed a complaint in ejectment against Firestone in the Court of Common Pleas of Luzerne County. On July 2, 1982, Firestone joined SBA as an additional defendant. SBA petitioned for removal of the action to the United States District Court for the Middle District of Pennsylvania on March 11, 1983, and the case was thereupon removed. Jurisdiction in federal court was predicated on 28 U.S.C. § 1346, which governs actions wherein the United States is a defendant. On September 6, 1983, summary judgment was entered against Firestone and in favor of SBA.[2] Shortly thereafter, the remaining parties, Reilly and Firestone, agreed to a stipulation of facts and the court ordered them to submit cross motions for summary judgment.

Reilly contended in connection with his summary judgment motion that, as purchaser of a quitclaim deed from the SBA, he acquired all of SBA's rights in the property. He thereupon argued that, by foreclosing on pre-lease mortgages, SBA divested Firestone of its lease under Pennsylvania law, and that SBA did not affirm the lease but specifically disaffirmed it in post-sale correspondence between SBA and Firestone. In response, Firestone argued that SBA, having become Firestone's "landlord" as a result of the lease assignment, could not, under Pennsylvania law, acquire pre-lease mortgages with the intent to use them to oust Firestone after the judicial sale. Firestone further argued that, even if SBA as assignee of the lease could terminate it through foreclosure, the statement

---

1. Reilly also signed an agreement of sale with SBA, which recited that parcel I was subject to the Firestone lease.

2. After summary judgment was entered in favor of SBA, jurisdiction based on the existence of the United States as defendant, 28 U.S.C. § 1346, was lost. However, we need not determine whether the district court could have nevertheless exercised pendent jurisdiction over Reilly's claim against Firestone because Reilly has since alleged the existence of diversity jurisdiction under 28 U.S.C. § 1332. Firestone concedes that the requirements of § 1332 are met. We acknowledge the existence of diversity jurisdiction as curing any defect presently in the allegation of jurisdiction in the complaint, as permitted by 28 U.S.C. § 1653. *McCurdy v. Greyhound Corp.*, 346 F.2d 224, 225 n. 1 (3d Cir.1965). At all events, the parties agree that their dispute is controlled by the laws of Pennsylvania.

in the assignment that "the lease will be recognized by Assignee ... so long as Lessee is not in default" constituted an affirmance of the lease requiring SBA (and thus Reilly) to honor it in the absence of default. Firestone contended, in addition, that SBA's statements that the property was subject to the Firestone lease, made in public documents subsequent to the judicial sale, also constituted an affirmance of the lease.

The district court granted summary judgment in favor of Firestone. Although the basis for the court's decision is somewhat unclear, it appears that the court found in Firestone's favor on two alternative grounds. First, the court apparently held that acceptance of the lease assignment put SBA in the position of being Firestone's "landlord," with the result that it could not divest Firestone of the lease by obtaining pre-lease mortgages for the sole purpose of foreclosing on them. Second, the court held that, even if SBA was technically not Firestone's landlord for purposes of lease termination, SBA had nevertheless rendered itself unable to terminate the lease because the covenant to recognize the lease contained in the assignment constituted an affirmance of the lease prior to the sale. On appeal, Reilly argues that the district court erred in applying Pennsylvania law regarding the ability of a mortgagee in possession to oust post-mortgage tenants, by disregarding the fact that a lease may not be affirmed by a mortgagee in possession prior to a foreclosure sale, and, in any event, by misconstruing the prerequisites for the finding of an affirmance.

## II.

We must first adjudicate the respective rights of a lessee and a purchaser at a judicial sale according to Pennsylvania law. The general rule in Pennsylvania is clear and is not disputed by the parties: a tenant for years loses his right of possession relative to a purchaser at a judicial sale when the foreclosure is on a mortgage recorded prior to the making of the lease. *Prudential Insurance Co. of America v. Kaplan,* 330 Pa. 33, 198 A. 68 (1938); *Brown v. Aiken,* 329 Pa. 566, 571–72, 198 A. 441, 444 (1938); *Picone v. Mowat,* 299 Pa.Super. 525, 445 A.2d 1253 (1982). Indeed, this rule is codified at Pa.Stat.Ann. tit. 68, § 342 (Purdon 1905), *suspended in part* by Pa.R. Civ.P. 1455 and *repealed in part* by 42 Pa.Cons.Stat.Ann. § 1722(b) (Purdon 1978),[3] which provides:

> The right of possession of a tenant for years shall be deemed paramount to that of a purchaser at a judicial sale *if, and only if,* the letting to him shall precede in point of date the entry of judgment ... on which such sale was had, and also shall precede the recording or registering of the mortgage ... through which by legal proceedings the purchaser derives title....

*Id.* (emphasis added). If this rule applies here, Reilly, who derives his rights from SBA, purchaser at the judicial sale, would (absent affirmance) be able to oust Firestone as tenant since SBA foreclosed on two mortgages, Miners and Wyoming, that were recorded prior to the making of the Firestone lease.

Firestone contends, and the district court found, however, that the present case falls under an exception to the general rule. According to Firestone and the district court, this case is controlled by the holding of Supreme Court of Pennsylvania in *Raker v. Murphy Co.,* 358 Pa. 339, 58 A.2d 18 (1948). In *Raker,* the owners of property subject to a mortgage and a post-mortgage lease procured an assignment of the mortgage, foreclosed on it, and brought proceedings to evict the lessee. Since mortgagor and mortgagee were the same persons, "the mortgage foreclosure proceedings did not change in any way the ownership of the property." Id. at 343, 58 A.2d at 19. The court held that this "trans-

---

**3.** The suspension applies only in actions to quiet title. The statute was repealed only so far as it is inconsistent with rules promulgated under 42 Pa.Cons.Stat.Ann. § 1722(b), and rules on the relevant subject have yet to be promulgated. Thus, the statute remains vital in the context of the present case. *See Picone v. Mowat,* 299 Pa.Super. 525, 527, 445 A.2d 1253, 1254 (1982).

parent device," undertaken for the sole purpose of ousting the tenant, would not operate under such circumstances to enable the owners, bound by a lease, to obtain the power to disaffirm it. The court stated:

> [I]f a landlord, for the purpose of destroying the lease, himself purchases a paramount mortgage, forecloses on it, and then, on the claim that he has succeeded to the rights of the mortgagee, seeks to evict the lessee, neither law nor equity will give countenance to such an attempt but will protect the right of the tenant to retain undisturbed possession for the term of the lease . . . .

*Id.* at 343–44, 58 A.2d at 20.

As an initial matter, it appears that *Raker* is inapposite to the case at hand. When SBA obtained assignment of the pre-lease mortgages and when it foreclosed on them, it was not owner of the property in question, but was simply a mortgagee. Unlike the situation in *Raker*, the mortgage foreclosure proceedings here changed the ownership of the property: title passed from Roddy, which was in default on the mortgages, to SBA. SBA's institution of foreclosure proceedings and purchase of the property at the judicial sale was not a "transparent device" through which an owner attempted to oust its own tenant, but a routine legal action through which a secured creditor executed judgment after default. Moreover, SBA's procurement of the pre-lease mortgages prior to foreclosure had a valid purpose: the assignment put SBA, which had an interest in the property of nearly $1 million, in the best possible lien position when the proceeds of the judicial sale were distributed.

■ Firestone nevertheless contends that *Raker* is implicated because SBA had accepted the lease assignment prior to foreclosure. According to Firestone, upon invocation of the assignment SBA became Firestone's "landlord" and thus could not terminate the lease by foreclosing on the mortgage. This contention fails, however, because Pennsylvania law makes clear that the acceptance of rent under an assignment by a mortgagee in possession does not convert the mortgagee into a landlord. As the Superior Court of Pennsylvania stated in *Girard Trust Co. v. Dempsey*, 129 Pa.Super. 471, 196 A. 593 (1938):

> The rent was received by the mortgagee not as owner or landlord, but as assignee of the mortgagor, by way of security for the mortgage debt, and its payment had no effect whatever upon the paramount lien of the mortgage or the legal effect which a foreclosure . . . upon it would have in the way of terminating all leases made subsequent to its recording. A mortgagee, by exercising the authority . . . to enter into possession of the mortgaged premises and collect the rents for the purpose of applying them to the mortgage debt, does not thereby jeopardize, limit, or restrict in any way the fundamental right secured to him by law to foreclose his mortgage and issue execution . . . and become purchaser of the property free and clear of all estates, interests, and claims subordinate to the mortgage.

*Id.* at 476, 196 A. at 595.[4] *See also Picone v. Mowat*, 299 Pa.Super. 525, 528–29, 445 A.2d 1253, 1255 (1982); *cf. Myers-Macomber Engineers v. M.L.W. Construction Corp.*, 271 Pa.Super. 484, 489, 414 A.2d 357, 369 (1979) (mortgagee in possession does not become owner and has fiduciary duty to collect rent and apply it to the mortgage debt).

In sum, when SBA foreclosed on the property, it was neither owner of the property nor Firestone's landlord. Accordingly, its foreclosure on the two paramount mortgages—Wyoming and Miners—discharged the Firestone lease. We thus hold that after the foreclosure, SBA had the ability to oust Firestone as tenant—unless SBA

---

**4.** As the decision of an intermediate state court, *Girard Trust* is not automatically controlling upon a federal court sitting in diversity. It is, however, presumptive evidence of the course the state's highest court might take in deciding the issue. *See National Surety Corp. v. Midland Bank*, 551 F.2d 21, 30 (3d Cir.1977). Given the absence of contrary authority in the 47 years since *Girard Trust* was decided, we consider it to be authoritative.

affirmed the lease. We turn to this latter issue.

## III.

■ A purchaser at a judicial sale not only has the power to terminate a post-mortgage lease, but also has the power to affirm the lease and bind himself and the lessee to it. *Curry v. Bacharach Quality Shops, Inc.*, 271 Pa. 364, 370, 117 A. 435, 437 (1921). The district court apparently held that SBA, even if not Firestone's "landlord" for purposes of the *Raker* rule, affirmed the lease prior to the judicial sale when it accepted the assignment, which provided in part that "Lessee's lease will be recognized by Assignee ... so long as Lessee is not in default...." Reilly contends that this holding of the district court was erroneous for two reasons: first, he argues that Pennsylvania law requires an affirmance to take place after the judicial sale, so that actions of the purchaser prior to the sale are in no way binding upon either party. Second, Reilly claims that, assuming the possibility of a pre-sale affirmance, the covenant in the assignment is an insufficient basis for the finding of such an affirmance. Because we find that the question of pre-sale affirmance raises an issue of material fact, we will also examine the record to determine whether SBA affirmed the lease after the sale as a matter of law. Reilly contends that SBA did not so affirm the lease; Firestone contends that it did.

### A.

■ Reilly reads *Girard Trust Co. v. Dempsey*, 129 Pa.Super. 471, 196 A. 593 (1938), to mean that a mortgagee in possession can never affirm a lease prior to the judicial sale. Insofar as it addresses the issue of affirmance, however, that case stands only for the proposition that the acceptance of rent by a mortgagee in possession is not, without more, enough to constitute pre-sale affirmance. The *Gir-*

*ard Trust* court did not address whether, and under what circumstances, a mortgagee in possession, who purchases the property at a foreclosure sale, can be bound to a post-mortgage lease because of his pre-sale conduct. Moreover, contrary to Reilly's claim, there is no doubt that Pennsylvania law recognizes the possibility of lease affirmance prior to foreclosure. In *Brown v. Aiken*, 329 Pa. 566, 198 A.2d 441 (1938), the Supreme Court of Pennsylvania held that a mortgagee in possession who later purchases the property at a judicial sale is bound by its pre-sale agreement to renew a postmortgage lease if such an agreement satisfies the Statute of Frauds. Since the agreement in that case was oral, the court refused to find an affirmance. *See also Most Excellent Assembly of Artisans Order of Mutual Protection v. Superb Realty Co.*, 353 Pa. 256, 44 A.2d 584 (1945) (affirming common pleas court's holding that former mortgagee in possession was bound after purchasing property at judicial sale by pre-sale written agreement to lease the property for an increased rental).[5] The district court thus acted properly when it examined SBA's pre-sale actions to determine whether it affirmed the lease at that time.

### B.

■ The district court found that SBA affirmed the lease prior to the foreclosure sale as a matter of law and entered summary judgment for Firestone. Fed.R.Civ.P. 56 provides that a trial court may enter summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

We have noted that summary judgment is a "drastic remedy," *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1980), and that "when there is a disagreement about the facts or

---

5. Reilly did not raise the Statute of Frauds as a defense to Firestone's claim that the assignment, which is not signed by SBA, constitutes an af-

firmance of the lease. The issue is thereby waived for purposes of this appeal.

the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners,* 676 F.2d 81, 84 (3d Cir.1982). In determining whether summary judgment is proper, a court of appeals, like the district court before it, must resolve any reasonable inferences from the underlying facts in favor of the party against whom judgment is entered. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

We may affirm the district court's summary judgment in favor of Firestone if the covenant in the assignment was an affirmance of the lease as a matter of law or, because we may affirm a district court's judgment on any grounds supported by the record, *see Bernitsky v. United States,* 620 F.2d 948, 950 (3d Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1970), we may also affirm the district court if the SBA's actions after the sale constituted an affirmance. Conversely, we must reverse the district court and order it to enter summary judgment in favor of Reilly if, as a matter of law—and viewing the record most favorably to Firestone—SBA's actions both prior to and following the judicial sale amounted to an unequivocal disaffirmance of the Firestone lease. If there are unresolved issues of material fact regarding affirmance both before and after the sale, we must remand the case to the district court for trial.

We believe that a remand for trial is required in this case. First, the determination whether SBA's covenant to recognize the lease constituted a pre-sale affirmance cannot, in our view, be made from the face of the assignment document. On the one hand, the words themselves are without qualification and, read literally, appear to bind SBA and its successors (including Reilly) to the lease no matter what might have taken place at an interim judicial sale. On the other hand, the words are found in an assignment document which provided that SBA's rights under the lease would terminate in the event that the mortgage was no longer in default or was paid in full. A reasonable inference to be drawn from this context is that, because the document vested SBA with only contingent rights, it burdened it with only contingent obligations; in other words, since the document gave SBA rights under the lease as (perhaps temporary) assignee, SBA was bound to honor the lease only while the assignment was in force. The meaning of the covenant is thus unclear and in dispute, and it is central to the question of pre-sale affirmance. The case therefore presents a genuine issue of material fact on this point.

■ Although the question is closer, the case also presents a genuine issue of material fact on the question of post-sale affirmance. Unlike a pre-sale affirmance, which must be in the form of a binding contract (*see supra* part IIIA), a post-sale affirmance is simply an "affirmative act ... tending to show a renunciation by the purchaser of his statutory right, or which may tend to show a waiver of the purchaser's right to disaffirm the lease." *Brown v. Aiken,* 329 Pa. at 573, 198 A.2d at 444. A classic example of lease affirmance is the acceptance of rent after the judicial sale, *see Curry v. Bacharach Quality Shops, Inc.,* 271 Pa. 364, 370–71, 117 A. 435, 437 (1921), although the acceptance of two rent checks while attempting to learn from the tenant whether a written lease exists has been held not to amount to an affirmance, *Titzell v. Esworthy,* 65 Pa.D. & C.2d 509 (1974). Conversely, a purchaser's refusal to accept rent, notification by letter that the lease is terminated, and offer to enter into a new lease have all been regarded as indications of the disaffirmance of a post-mortgage lease. *See Brown v. Aiken,* 329 Pa. at 572, 198 A.2d at 444 (notification in writing to "vacate the premises"); *North Penn Savings & Loan v. La Mar, Inc.,* 9 Pa.D. & C.3d 269, 274–75 (1977) (notification that lease was "automatically cancelled" by purchase at sheriff's sale, and offer of new lease).

In the case at bar, SBA undertook several actions that clearly indicate a disaffirmance of the lease. Immediately following the judicial sale, SBA refused to accept rent from Firestone. It also wrote several letters to Firestone in which it stated that the lease was terminated and that, unless Firestone agreed to purchase the premises, SBA would sue in ejectment. If this were all that SBA did in connection with the lease after the judicial sale, we would have no difficulty in concluding that, as a matter of Pennsylvania law, SBA disaffirmed the Firestone lease. But SBA did more. It represented to Reilly in two agreements of sale that the property was subject to the Firestone lease, and it gave a copy of the lease to Reilly prior to the final sale. While we doubt that SBA's public acknowledgment of the lease was motivated by anything more than a desire to deal honestly with a prospective purchaser of the premises, we believe that it is possible under Pennsylvania law for post-sale pronouncements by a purchaser at a judicial sale to amount to a "renunciation of his statutory right" to terminate the lease. In sum, although we think it unlikely, we cannot rule out the possibility that the evidence on the record regarding SBA's apparent public recognition of the vitality of the lease, combined with additional evidence not presently on the record, could lead to the conclusion that SBA renounced its right to terminate the lease. Thus, whether or not SBA affirmed the lease after the foreclosure sale is an issue of fact not resolvable on the record before us.

### C.

We therefore hold that there are disputed issues of material fact regarding the questions whether SBA affirmed the Firestone lease before or after the judicial sale.

---

**6.** Firestone attached to its motion for summary judgment several documents indicating widespread public acknowledgment of the vitality of the lease by SBA. Reilly objected to the consideration of these documents on summary judgment on the ground that they were not properly authenticated. The district court did not consider the authentication issue because, having found a pre-sale affirmance, it did not need to

Accordingly, we will vacate the judgment of the district court in favor of Firestone, and will remand for further proceedings consistent with this opinion.[6]

reach the question of post-sale affirmance—for which the disputed documents are relevant. On remand, Firestone will have the opportunity to cure any defects in the authentication of any documents. If Firestone fails to do so, the district court, if it reaches the post-sale affirmance question, will have to address the authentication issue.